UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KMIYA RANSOM, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-1743 |
| | § | |
| SAN JACINTO JUNIOR COLLEGE, *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is Defendant San Jacinto Community College's ("College") Amended Motion to Dismiss all claims brought by *pro se* Plaintiff Kmiya Ransom ("Ransom") (Doc. 11).[1] Upon review and consideration of the motion, the responses, the replies, and the applicable law, the Court concludes that the motion should be granted.

**I.      Background**

Ransom's claims are based on her dismissal from the College's Licensed Vocational Nursing Program ("Program"). Ransom, an African-American, enrolled in the Program in January 2010. (Am. Compl., Doc. 10 at 2). The Program consists of three semesters, or "levels." (*Id*.). All students are given two opportunities to complete the Program. (*Id*.) Initial enrollment counts as the first opportunity. (*Id*.) Receiving a grade below a "C" in any course triggers the second and final opportunity, and requires the student to retake that semester or level. (*Id*. at 2–3). A second course failure results in dismissal from the Program. (*Id*. at 2).

---

[1] The Amended Motion to Dismiss was filed on behalf of the primary defendant, the College, as well as the individual defendants in their capacity as employees of the College. The College argues that the individual defendants should be dismissed under FED. R. CIV. PRO. 4(m). (Doc. 11 at 5). The Court refrains from addressing this argument as the motion is granted as to all of the defendants on other grounds.

In Ransom's second semester, Ransom and all other Level II students in the Program were required to take an "experimental hybrid" pharmacology course. (*Id*.). Ransom and five other students failed the course. (*Id*. at 3). They complained about their grades to the College's Vice Chancellor and were invited to attend a meeting with the Program's director. (*Id*.). At the meeting, the director stated that all students who failed the pharmacology course would be required to re-take the Level II curriculum, but the course failure would be "waived" and would not count against them. (*Id*.). Three of the six students, who were all white, had previously failed a course and the "waiver" allowed them to stay in the Program. (*Id*. at 7).

Ransom re-took and passed all of her second-semester courses, but she failed a pediatrics course in her third semester in the spring of 2011. (*Id*. at 3). On May 12, 2011, Ransom's expected graduation date, the College informed Ransom that her failure in the pediatrics course was counted as her second failure; she was dismissed from the Program and was not eligible for graduation. (Original Pet., Doc. 1-1, ¶ 18).[2] On May 16, 2011 Ransom initiated an appeal of her pediatrics grade pursuant to the Program's grievance protocol. (Doc. 10 at 7). She claimed that her failing grade was due to an error in the instructor's grading methodology and the omission of a portion of her grade. (*Id*. at 4). Ransom met with Program administrators on May 17, 2011,[3] where they affirmed the decision to dismiss her. (Doc. 1-1 at 7). Thereafter, Ransom filed a formal grade appeal with the College and her dismissal was re-affirmed on May 30, 2012. (*Id*. at

---

[2] In her Amended Complaint, Ransom omits the date of when she first learned of her dismissal. The College claims Ransom intentionally excluded the date in an attempt to "hide the ball" so as to avoid the statute of limitations. (Reply, Doc. 15 at 2). Regardless of Ransom's intention, the Court will consider any pertinent facts contained in Ransom's original complaint that are useful in resolving the dispute. *See Cal. Dental Assn. v. Cal. Dental Hygienist' Assn.*, 271 Cal. Rptr. 410, 412 n.1 (Cal. Ct. App. 1990) ("[A] plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory averments, in a superseding, amended pleading.")

[3] There is confusion in the record regarding the date of this meeting. Because this date is not material to the issues implicated in pending motion, the Court will use the May 17, 2011 date provided in Ransom's original complaint and her amended responses, rather than the July 27, 2011 date provided in her amended complaint.

9; Doc. 10 at 7). Ransom alleges that the outcome of her grade appeal was predetermined and was motivated by the pediatrics course instructor's personal bias against her stemming from previous complaints Ransom made to Program administrators regarding that particular instructor. (*Id*. at 4).

On May 16, 2013, Ransom filed her Original Complaint in state court, asserting various state and federal claims, and arguing in essence that the College discriminated against her because it "waived" a course failure for three white students, thereby allowing them to remain in the Program, and refused to waive the failure for her because she is African American. The College timely removed the action to this Court and filed its motion to dismiss.

Thereafter, Ransom filed an Amended Complaint in which she sets forth multiple claims. First, she asserts a claim of promissory estoppel[4] based on the College's alleged promise of the "waiver," upon which Ransom detrimentally relied. Second, Ransom claims, under to 42 U.S.C. § 1983, that the College violated the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. According to Ransom, the College: (i) unequally applied the "waiver" to only white students; (ii) failed to follow its own procedures for both the initial grade appeal and for the entire appeal process; and (iii) unjustly deprived Ransom of her property interest in receiving a nursing degree. Lastly, Ransom asserts claims of race discrimination and retaliation in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq*. Ransom alleges that the College, a recipient of federal financial assistance, discriminated against her on the basis of race and retaliated against her "for her participation in investigations and hearings against [it]".

---

[4] In her Amended Complaint, Ransom describes her claim as one for "Promissory Estoppel / Breach of Contract." She does not, however, offer any facts to show the existence of an oral or written agreement that would provide a basis for a breach of contract claim. Therefore, the Court will construe the claim as only one for promissory estoppel.

In its Amended Motion to Dismiss, the College argues that all of Ransom's claims fail. It asserts that Ransom's Title VI and constitutional claims are barred by the statute of limitations and her contract claim is barred by the statute of limitations and sovereign immunity. Ransom filed several responses (Docs. 13, 14, 19, 22), wherein she generally repeats her allegations. She does, however, respond to the College's statute of limitations defense by arguing that the statute of limitations on her claims did not accrue until May 17, 2011, the day of the initial administrative meeting on her grievance when she claims that she learned she would not be allowed to re-enter the Program. (Am. Resp., Doc. 19 at 3).

## II.     Legal Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining plausibility, courts should first disregard "formulaic recitation[s] of the elements" of the legal claim as conclusory. *Id.* at 662. Second, the court must assume the truth of all factual allegations and determine whether those factual allegations allege a plausible claim. *See id.* "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (internal citation omitted) (quoting FED. R. CIV. P. 8(a)(2)). If the facts fail to "nudge [the] claims across the line from conceivable to plausible, [then the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. While a *pro se* complaint is held to a lesser standard than one drafted by an attorney, even a *pro se* plaintiff must plead factual matters that

permit the court to infer more than the mere possibility of misconduct. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009). On a Rule 12(b)(6) review, the court may consider "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017–18 (5th Cir. 1996)). "A statute of limitations may support dismissal under Rule 12(b) (6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

**III. Discussion**

  *A. Statute of Limitations*

For actions brought under § 1983 and Title VI, courts in the Fifth Circuit borrow the forum state's general personal injury limitations period, which in Texas is two years. *Griffin v. Round Rock Indep. Sch. Dist.*, No. 95-50762, 82 F.3d 414, at *1 (5th Cir. 1996) (per curiam); *see also Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1521 (5th Cir. 1993) (affirming district court's decision that Title VI's claims should have the same statute of limitations as § 1983 claims). *Cf. Owens v. Okure*, 488 U.S. 235, 249 (1989) (§ 1983 encompasses claims of discharge without procedural due process) (citing *Wilson v. Garcia*, 471 U.S. 261, 273 (1985)); *Braden v. Tex. A & M Univ. Sys.*, 636 F.2d 90, 93–94 (5th Cir. 1981) (§ 1983 encompasses claims of deprivation of property interest). Federal law, however, governs when a cause of action arises. *See Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). Generally under federal law, "'the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Lavelle v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980) (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)).

For discrimination cases, the statute of limitations begins to run upon "discovery of the original act of discrimination, *not* future confirmation of the injury or determination that the injury is unlawful[.]" *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir. 1996) (emphasis in original) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250 (1980)). *See also Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998) ("Claims of discrimination accrue when the plaintiff is informed of the discriminatory act."); *De Leon Otero v. Rubero*, 820 F.2d 18, 19 (1st Cir. 1987) (stating that a continuing violation does not exist if the complaint shows that the plaintiff is only suffering from the ongoing effects of some past discriminatory act); *Green v. Bastyr Univ., LLC*, 295 Fed. App'x 128, 129 (9th Cir. 2008) (holding that statute of limitations was not tolled while the *pro se* plaintiff pursued other remedies that he was not required to exhaust before filing a civil rights complaint under Title VI); *Tapp v. Univ. of Tex. Health Scis. Ctr. at Hous.-Sch. of Dentistry*, Civ. A. No. H-11-2971, 2011 WL 6339819, at *4 (S.D. Tex. Dec. 19, 2011), *aff'd*, 538 F. App'x 508 (5th Cir. 2013) (holding that for a disability discrimination case, the statute of limitations runs when the student first learns of his dismissal as opposed to when the decision is affirmed by appeal).

Ransom's Title VI and constitutional claims accrued on May 12, 2011. On that date, Ransom was clearly on notice of her second course failure, her ineligibility for graduation, and her dismissal. Also at that time, Ransom knew that the College had previously waived the pharmacology course failure for three other white students and allowed them to remain in the Program. Ransom, therefore, had all the information needed to bring her discrimination suit against the College prior to her meeting with Program administrators on May 17, 2011. The Program's subsequent affirmation of her dismissal after the meeting was only a "future confirmation of the injury." *See Tapp*, 2011 WL 6339819, at *4 ("That Tapp did not exhaust his

appeals process until [later] is irrelevant to when his claims accrued."). Ransom did not file suit until May 16, 2013, three days after the statute of limitations lapsed. Consequently, her Title VI and constitutional claims are time barred; therefore, the Court grants the College's motion to dismiss these claims.

### B. *Sovereign Immunity*

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has "consistently held that a State that does not consent is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Further, the Fifth Circuit has stated that, "[o]nly the state government and 'arms of the state' qualify for sovereign immunity under the Eleventh Amendment." *Lewis v. Midwestern State Univ.*, 837 F.2d 197, 198 (5th Cir. 1988) (citing *Edelman*, 415 U.S. at 94 n.12). "The Amendment does not ordinarily apply to municipal corporations and other political subdivisions of the state." *Lewis*, 837 F.2d at 198.

Whether a public university qualifies for sovereign immunity depends on its status under state law and its relationship to the state government. *Id.* The Fifth Circuit has made the determination that the College is a "political subdivision" and therefore does not qualify for Eleventh Amendment immunity. *See Goss v. San Jacinto Jr. Coll.*, 588 F.2d 96, 99 *modified*, 595 F.2d 1119 (5th Cir. 1979) (stating that there is "no doubt that [San Jacinto Junior College] has no Eleventh Amendment immunity"); *Hander v. San Jacinto Jr. Coll.*, 519 F.2d 273, 279–80, *aff'd per curiam on rehearing*, 522 F.2d 204 (5th Cir. 1975) ("An analysis of the statutory authority for establishing, funding, and operating junior college districts in Texas and state

decisional law construing that authority reveals that these districts are, within the Eleventh Amendment context, independent political subdivisions not immune from suit."). Accordingly, the College's defense of sovereign immunity for Ransom's promissory estoppel claim fails as a matter of law.

The College's statute of limitations argument also fails as promissory estoppel sounds in contract rather than tort and has a four-year statute of limitations. *See Ambulatory Infusion Therapy Specialist, Inc. v. N. Am. Adm'rs, Inc.*, 262 S.W.3d 107, 119 (Tex. App.—Houston [1st Dist.] 2008, no pet.); TEX. CIV. PRAC. & REM. CODE ANN. § 16.051.

To state a cause of action for promissory estoppel, a plaintiff must show (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to her detriment. *Garcia v. Lucero*, 366 S.W.3d 275, 280 (Tex. App.—El Paso 2012, no pet.). "To show detrimental reliance, the plaintiff must show that he materially changed his position in reliance on the promise." *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex. App.—Houston [14st Dist.] 2007, no pet.) (citing *Miller v. Raytheon Aircraft Co.*, 229 S.W. 3d 358, 379 (Tex. App.—Houston [1st Dist.] 2007, no pet.)) *English*, 660 S.W.2d at 524 (finding no promissory estoppel when plaintiff could not show that he would not have taken his detrimental actions if defendant had not made the promise)).

In her amended complaint, Ransom asserts that Defendants made a promise "that the [Level II] courses would be waived [and] promised that Plaintiff…would be allowed to re-enroll in the [Level II] courses…without taking any of the required steps for re-admission for a failure because the courses were not to be considered failures, but rather were waived completely." (Doc. 10 at 5). She further asserts that she reasonably and substantially relied on Defendants' promise because she "reasonably believed that [the pediatrics course failure] was her first

failure" and "[i]n reliance on [Defendants'] promise, [she] sought to repeat the final semester in accordance with the nursing rules…and was denied." (*Id.*) Ransom claims that this "reliance" was foreseeable to Defendants because they "orally assured" her that they would "not follow any of the nursing handbook's procedures for re-admission after the waived [Level II] semester because it was not considered a failure." (*Id.*) In an attempt to clarify the basis of her claims, she adds that she "completed coursework over the course of 4 semesters receiving financial aid in reliance on Defendants' promise that she would receive an education preparing her to enter the nursing profession and that she would be given every opportunity to succeed." (*Id.*)

Assuming that the College did promise Ransom that her Level II course failure would be waived and would not count toward the Program's two-failure limit, Ransom has offered no evidence of detrimental reliance on that promise. She does not allege that but for Defendants' promise she would have withdrawn from the Program; nor does she allege that she would have put forth greater effort to secure a passing grade in her pediatrics course. Nowhere does Ransom explain how she would have materially changed her position if Defendants had not promised to waive the pharmacology course failure. Furthermore, Ransom's statement that she acted in reliance on "Defendants' promise that she would receive an education preparing her to enter the nursing profession and that she would be given every opportunity to succeed" reveals the true nature of her grievance—she did allege that she relied on a promise to waive her course failure, but a promise to "be given every opportunity to succeed" and to receive a nursing degree. Construing Ransom's factual allegations in a light most favorable to her, Ransom fails to state a claim for promissory estoppel.

**IV. Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that Defendant San Jacinto Community College's Amended Motion to Dismiss (Doc. 11) is **GRANTED**, and Plaintiff Kmiya Ransom's case is **DISMISSED**.

Final Order of Dismissal will be entered by separate document.

SIGNED at Houston, Texas, this 4th day of August, 2014.

*[signature]*
MELINDA HARMON
UNITED STATES DISTRICT JUDGE